IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICIA BAILEY,<br><br>Defendant. | Case No. 23-CR-336 (APM) |

### UNITED STATES' MOTION FOR A DOWNWARD DEPARTURE
### AND MEMORANDUM IN AID OF SENTENCING

The Court presided over two trials in which Patricia Bailey testified as a cooperating witness. Through her testimony, she told the story of how she and her co-conspirator Dana Garnett defrauded the D.C. Public School ("DCPS") system for at least five years. Working with three hand-picked vendors—Don McWhirter, Duane King, and Yelake Meseretu—the two women orchestrated a pay-for-play scheme that ripped off D.C. public school kids of tens if not hundreds of thousands of dollars. She fabricated documents, falsely certified that goods had been delivered when they had not, and used the kickbacks as gambling money. She betrayed the trust placed in her by DCPS, the very agency whose budget she was paid to protect. To put it mildly, Patricia Bailey is no saint.

But unlike her co-defendants Dana Garnett and Yelake Meseretu, Ms. Bailey accepted responsibility for her malfeasance. She came clean with the FBI and admitted that she caused a loss of at least $95,000 to DCPS. As part of her cooperation, she agreed to record her interactions with one of the vendors, Meseretu, to illustrate how the scheme worked. And of course, she testified against Garnett and Meseretu, individuals who she previously considered friends. Nothing about her cooperation was easy for Ms. Bailey. Given her acceptance of responsibility and

1

substantial assistance, the government requests the Court reduce Ms. Bailey's final offense level by 10 levels, resulting in a revised U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 4-10 months. Consistent with that Guidelines range, the government submits that a sentence of 12 months of home detention followed by three years of supervised release is sufficient but not greater than necessary to achieve the goals of sentencing. The government also requests that the Court order $72,000 in restitution, as that was the amount the defendant agreed she personally profited from the scheme.

## BACKGROUND

### A.   The Offense Conduct

By this point, the Court is well acquainted with the pay-for-play scheme the defendant and her co-conspirators perpetrated against DCPS. By virtue of their positions in procurement at DCPS, Garnett and Bailey had control over valuable DCPS contracts. As the evidence at both trials demonstrated, the two women fabricated orders for purchases of supplies and coordinated with their hand-picked vendors to short the fake orders. Once the vendors under-delivered the goods, the two DCPS insiders falsely certified that all of the goods had been delivered, ensuring that DCPS made full payment to the vendors. In return, the vendors split the overpayment between Garnett and Bailey. As part of the scheme, everyone got a little something. Garnett and Bailey got cold hard cash. The vendors got a continued stream of DCPS business. And DCPS got the raw end of the deal.

As Ms. Bailey testified, everyone involved in the conspiracy took steps to conceal their conduct. They used the encrypted messaging application, Signal, to communicate about the fraudulent orders. When they created the orders, they used "consumables," goods that could not be audited easily. The vendors submitted false paperwork, so there would be no paper trail

documenting the fraud. And the vendors kicked back the money from the fraud to Bailey and Garnett in the parking lots of restaurants using cash, the most difficult form of payment to trace.

Notwithstanding the difficulties in investigating and proving the details of the fraud, the evidence at trial demonstrated the scheme in action, including several specific examples of inflated orders. Ms. Bailey told the jury that she and Garnett started creating fraudulent orders with McWhirter in 2017 or 2018. Next up was Meseretu. And finally, Garnett brought King into the scheme, as well. Although Ms. Bailey conceded that not every order involved fraud, her best estimate was that between fifty and seventy percent of orders with those three vendors were inflated and involved kickbacks. Ms. Bailey also told the jury that sometimes, these vendors would deliver nothing at all, particularly in times when Cardozo, the school at which Ms. Bailey worked, had extra money at the end of a school year.

Both juries credited Ms. Bailey's testimony. But more importantly, the juries did not have to take Ms. Bailey's word for it. In Garnett's trial, the jury also heard from King and McWhirter, who corroborated everything that Ms. Bailey said. Likewise, the evidence included text messages and emails between Garnett, Bailey, and the three vendors going back as far as 2019, that further demonstrated the veracity of Ms. Bailey's testimony. The same was true of bank and phone records shown to the jury. Despite Garnett's and Meseretu's best efforts to undercut the strength of the evidence, these documents showed the fraud in black and white. And then, of course, there were the recorded bribes the defendant paid to Ms. Bailey in February 2023. Put simply, based in part on Ms. Bailey's testimony, the juries in both trials convicted Garnett and Meseretu of conspiracy and bribery.

### B. The Sentencing Guidelines

Consistent with the parties' plea agreement, the Presentence Investigation Report ("PSR")

calculated the Guidelines range as follows:

| | |
|---|---:|
| Base Offense Level, U.S.S.G. § 2C1.1(a)(1) | 14 |
| Specific Offense Characteristics | |
|     More than One Bribe, § 2C1.1(b)(2) | +2 |
|     Loss Amount. Between $95,000 and $150,000 | |
|     § 2B1.1(b)(2)(A)(iii) | +8 |
| Acceptance of Responsibility | -3 |
| Zero Point Offender, § 4C1.1(a)(1)-(10) | -2 |
| **Total Offense Level** | **19** |

Based on a Criminal History Category I, the defendant's Guidelines range set forth in the PSR is 30-37 months. As explained below, however, given the defendant's substantial assistance, the government requests the Court reduce the defendant's Total Offense Level by 10 levels, resulting in a revised Total Offense Level of 9 and a revised Guidelines range of 4 to 10 months of incarceration.

## ARGUMENT

Patricia Bailey stole from DCPS for years. At the same time that she was fabricating orders and taking kickbacks, she was collecting her DCPS paycheck month after month after month. Without a doubt, the defendant's hypocrisy in defrauding DCPS involved a jaw-dropping level of hypocrisy. It also constituted a profound breach of the public trust and a disturbing example of public corruption. But despite her unseemly conduct, the defendant made sincere efforts to atone for her sins. And for that reason, a year of home detention followed by three years of supervised release is warranted.

    **A.**     **Applicable Sentencing Framework**

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Although the Guidelines are advisory, they are nevertheless "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*. at 49. Accordingly, they are the "starting point and the initial benchmark" for sentencing. *Id*.

After calculating the applicable Guidelines range, the Court must then consider the applicable factors set forth in 18 U.S.C. § 3553(a). The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the Guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

B.    **Defendant's Substantial Assistance**

The government seeks a downward departure under § 5K1.1 of the Guidelines based on the defendant's substantial assistance. Although she lied to the FBI during her first interview, she accepted responsibility shortly after, agreed to cooperate, and provided truthful information to the government. Time is often of the essence in white-collar investigations, as paper trails and text message threads are easy to sweep away with the punch of a button on a shredder. *See* U.S.S.G. § 5K1.1(a)(5) (timeliness). Ms. Bailey's assistance was also critically important. *See* U.S.S.G. §

5K1.1(a)(5) (usefulness of cooperation). Indeed, the information Bailey provided led to the convictions of at least three other individuals. As one of the only witnesses with first-hand knowledge of the totality of the scheme, Bailey was a key witness at Garnett's trial. *See* U.S.S.G. § 5K1.1(a)(3) (nature and extent of cooperation). Likewise, she was the most critical witness at Meseretu's trial, as well. Finally, Bailey met with the government multiple times, giving the government ample time to probe the credibility of her information and the reliability of her potential testimony. The jury likewise observed Bailey's testimony and clearly found it credible. *See* U.S.S.G. § 5K1.1(a)(2) (truthfulness and reliability of information). Given Bailey's extensive and continuing cooperation, the government recommends the Court grant a 10-level downward departure, which results in an offense level of 9. With that revised offense level, the Guidelines range for the defendant is calculated to be 4-10 months of incarceration.

    **C.**    **The § 3553(a) Factors**

As explained below, a year-long period of home detention followed by three years of supervised release and $72,000 in restitution is sufficient but not greater than necessary to achieve the goals of sentencing.

    **1. The Nature and Circumstances of the Offense**

First, the nature and circumstances of the offense justify a lengthy period of home detention. To be sure, as a public official involved in the scheme, the defendant spectacularly breached the trust of her employer, DCPS. She stole money from DC Public School kids, a severely underserved population who deserve the most but are often provided the least. And she did so while accepting a paycheck from DCPS every month. She fleeced the very agency whose taxpayer dollars she was paid to protect. Through her corrupt bargain with her co-conspirator, the defendant robbed D.C. of its right to the honest services of its public officials.

### 2.     The Need for Deterrence and to Promote Respect for the Law

Second, the Court's sentence must also promote the rule of law, afford just punishment, and provide adequate deterrence. Sending a strong message is especially important in cases involving public officials engaged in misconduct. Along with white-collar crime, public corruption cases are "prime candidates for general deterrence" because they often are "more rational, cool, and calculated than sudden crimes of passion or opportunity." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citations omitted). As this case demonstrates, grift among government employees is unfortunately all too common. Many vendors doing business with government agencies consider paying bribes and kickbacks to be a cost of doing business. And many public officials such as Bailey believe they are entitled to skim a little off the top.

### 3. The History and Circumstances of Defendant

Like her co-conspirators, the defendant's history and upbringing cannot explain her colossal lapse in judgment. But sunlight is the best disinfectant. And the defendant came into open court and exposed a deeply disturbing and surprisingly widespread scheme to defraud. Having spent many, many days with Ms. Bailey, the government witnessed first-hand the sincerity of Ms. Bailey's contrition. The defendant's acceptance of responsibility and sincere remorse stand in stark contrast to her partners in crime, Dana Garnett and Yelake Meseretu, neither of whom could bring themselves to admit their crimes.

### D.     Restitution

The defendant's criminal conduct is governed by the Mandatory Victims Restitution Act, 18 U.S.C. §3663A ("MVRA"), and accordingly, the Court must impose restitution. The government submits that the amount of profit that the defendant admitted she made from the scheme is an appropriate figure for restitution: $72,000.

7

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Government respectfully submits that a sentence of 12 months of home detention followed by 36 months of supervised release is a just and appropriate sentence that holds true to the §3553(a) factors that guide the Court's discretion. The Court should also order the defendant to pay $72,000 in restitution.

>Respectfully submitted,
>
>JEANINE FERRIS PIRRO
>UNITED STATES ATTORNEY
>
>By: /s/*Christopher R. Howland*
>Christopher R. Howland
>Assistant United States Attorney
>Fraud, Public Corruption, & Civil Rights
>D.C. Bar No. 1016866
>601 D Street, N.W.,
>Washington, D.C. 20530
>202-252-7106
>Christopher.Howland@usdoj.gov